# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 5, 2009

## STATE OF TENNESSEE v. ANTHONY COOK

### Direct Appeal from the Criminal Court for Shelby County
### No. 06-09032    W. Otis Higgs, Jr., Judge

_____

### No. W2008-01367-CCA-R3-CD  - Filed April 5, 2010

_____

Following a jury trial, Defendant, Anthony Cook, was convicted of attempted first degree premeditated murder, a Class A felony, and two counts of aggravated assault, a Class C felony. The trial court sentenced Defendant as a Range I, standard offender, to twenty years for his attempted murder conviction and three years for each aggravated assault conviction. The trial court ordered Defendant to serve his sentences concurrently for an effective sentence of twenty years. On appeal, Defendant challenges the sufficiency of the convicting evidence and argues that the trial court erred in admitting into evidence the photographic lineup used by a State's witness to identify Defendant as the perpetrator of the offense. After a thorough review, we conclude as plain error that Defendant's convictions of the two counts of aggravated assault in addition to the conviction for attempted first degree premeditated murder violates double jeopardy principles. Accordingly, we merge Defendant's convictions of aggravated assault into his conviction of attempted first degree premeditated murder. We affirm the trial court's judgment as to Defendant's conviction of attempted first degree premeditated murder and his sentence of twenty years. We remand solely for the correction and entry of an appropriate judgment consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right;
### Judgment of the Criminal Court Affirmed in Part; Remanded

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which J. C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Anthony Cook.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William L. Gibbons, District Attorney General; and Corliss Shaw, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Larry Corleon Gwin, the victim, testified that Jerry Bradley picked him up on August 10, 2005, in Mr. Bradley's orange truck, and the two men drove to a gathering at Defendant's home on Hamilton Street. The victim and Mr. Bradley left the party for a few minutes to go to the store on a "beer run." On the way, a police officer initiated a traffic stop which Mr. Gwin attributed to the loud music that was emanating from the truck. The officer searched Mr. Bradley's truck, but did not discover any weapons or other contraband. The victim and Mr. Bradley were allowed to drive away.

Instead of continuing on to the store, Mr. Bradley drove back to the party on Hamilton Street where Defendant was standing on the sidewalk. Mr. Bradley stopped his truck, and the victim stepped out. The victim knew Defendant by the nickname, "Freaky." The victim said that he took a couple of steps toward Defendant, shook Defendant's hand, and asked, "What's up with you, [Defendant]?" Defendant stepped behind the victim, and the victim heard gunshots. The victim stated that he was not aware that he had been shot. The victim saw Mr. Bradley running down Hampton Street as Defendant pointed his gun at Mr. Bradley. Brandy Jones, who was attending the party, brought the victim a pillow and told him to sit down. The victim said that he looked down and saw that his right shoe was bloody.

The victim sat down on the pavement, and Defendant approached him a second time. Defendant told Ms. Jones to move away because he was going to shoot the victim in the head. The victim repeatedly asked Defendant why he had shot him. The victim testified that Defendant kept waving his gun in the air, saying that he was "sick of this." The ambulance arrived, and the victim was transported to the hospital where he underwent surgery for a gunshot wound to his abdomen. The victim acknowledged that he did not immediately tell the investigating officers that Defendant was the shooter. Instead, after he was released from the hospital approximately two and one-half weeks later, the victim located Defendant and confronted him again about the incident. The victim said that Defendant looked shocked to see him, and Defendant did not respond when the victim asked him why he had shot the victim.

On cross-examination, the victim stated that he disclosed Defendant's identity to the investigating officers when he learned that Defendant had given a statement to the police identifying Morris Brown as the shooter. The victim acknowledged that Mr. Brown was present at the party on Hamilton Street, but he denied that he had an altercation with Mr. Brown that night. The victim stated that he did not believe that a man named Curtis West was at the party.

Jerry Bradley, Jr. testified that he drove the victim to a gathering on Hamilton Street on August 10, 2005. Mr. Bradley stated that Defendant was sitting outside on the curb when they arrived. Mr. Bradley and the victim got out of Mr. Bradley's truck and began greeting the people at the party. Mr. Bradley said that the victim was standing with his back toward Defendant. Defendant stood up and shot the victim in the back. Mr. Bradley said that he heard four or five gunshots from what appeared to be a 9 mm gun. Mr. Bradley stated that Defendant pointed the gun at him, and Mr. Bradley ran down the street. The ambulance had arrived by the time Mr. Bradley returned to the scene. Mr. Bradley identified Defendant at trial as the person who had shot the victim.

Mr. Bradley said that the police officers transported him to the police station in the patrol car. During the interview, Mr. Bradley identified Defendant as the shooter. Mr. Bradley stated, however, that he did not sign the statement when it was reduced to writing because he felt it contained inaccuracies. Mr. Bradley said that the victim did not have an argument with anyone at the party, and he did not notice anyone other than Defendant carrying a gun.

On cross-examination, Mr. Bradley denied that any of the partygoers asked him to make a "beer run." Mr. Bradley acknowledged that according to his written statement, he told the investigating officers that he did not see the person who fired the gun at the victim. Mr. Bradley, however, stated that the answer reflected in his written statement was not true, and was one of the reasons why he did not sign the typed statement. Mr. Bradley acknowledged that he saw Mr. Brown at the party. Mr. Bradley said that Mr. West was not present that night.

Brandy Jones testified that she was at the party on Hamilton Street on August 10, 2005. Ms. Jones said that she knew Defendant only as "Freaky." Ms. Jones did not know Defendant's given name until after he was arrested. Ms. Jones stated that she took a pillow to the victim after he was shot. Defendant walked up and pointed a gun at the victim's head, and Ms. Jones left.

Ms. Jones said that she had not seen Defendant "in years," and she did not see anyone in the courtroom resembling "the Freaky [she] saw then, back then." Ms. Jones, however, stated that the investigating officers showed her a photographic lineup prior to trial, and she identified Defendant as the shooter. A copy of the photographic lineup was introduced as an exhibit at trial over Defendant's objection. Ms. Jones identified her writing on the sheet which stated, "This is who shot Larry," and stated that she drew a circle around Defendant's photograph.

On cross-examination, Ms. Jones acknowledged that she was not on the street when she heard the sound of gun fire. When Ms. Jones stepped outside, a group of people had

gathered around the victim. Ms. Jones said that she did not see Maurice Brown at the party. Ms. Jones reiterated that she was trying to assist the victim when Defendant walked up, pointed a gun at the victim's head, and said that he "was tired of this s___." Ms. Jones stated that Defendant did not point the gun at anyone else. Ms. Jones said that she visited the victim twice while he was hospitalized. Ms. Jones denied discussing the incident with the victim on either occasion. Ms. Jones stated, "It happens and then . . . [i]t's in the past."

Officer Adam Pickering with the Memphis Police Department testified that he first encountered the victim on August 10, 2005, when he initiated a traffic stop of Mr. Bradley's truck. Officer Pickering stated that he observed an orange truck enter Hamilton Street at a high rate of speed. The victim was a passenger in the truck. Both men appeared nervous, so Officer Pickering asked the victim and Mr. Bradley to step out of the truck. A pat-down search of both men did not reveal any weapons. Mr. Bradley consented to a search of his truck, and no weapons or other contraband were found. Mr. Bradley and the victim were allowed to leave.

Officer Pickering stated that he heard the sound of gunshots on Hamilton Street approximately thirty minutes later and arrived at the crime scene as the dispatcher was putting out a call about the shooting. Officer Pickering said that the victim was lying in the middle of the street bleeding profusely. Officer Pickering did not see any weapons on or near the victim. On cross-examination, Officer Pickering stated that he did not recollect either Mr. Bradley or the victim saying during the traffic stop that they were on the way to a store to buy beer.

Officer Stuart Bronstein with the Memphis Police Department secured the crime scene on Hampton Street. Officer Bronstein stated that a man, whom Officer Bronstein identified at trial as Defendant, approached him as he was walking back to his patrol car. Defendant said, "I believe you're looking for me. They're saying I supposedly shot someone." Officer Bronstein placed Defendant in the back of his patrol car. Officer David Payment, with the Memphis Police Department's crime scene unit, testified that he collected a white tee shirt, a pillow, a plastic water bottle, and three .40 caliber spent shell casings from the scene.

The State rested its case-in-chief, and Defendant presented his defense. Curtis West testified that he lived at 1359 Hamilton Street. On August 10, 2005, Mr. West walked down the street and joined a group of people in front of Defendant's house. Mr. West said that he had known Defendant for a long time, and Defendant was present at the gathering. Mr. West stated that he was standing outside when someone yelled, "gun," and everyone started to run. Mr. West ducked into the home of Defendant's neighbor and waited approximately thirty minutes. Mr. West then walked back to Defendant's yard because he wanted to play cards. Defendant was walking up and down the sidewalk talking on his cell phone. An orange truck pulled up and stopped in the middle of the street, and "both doors flew open." Two men

jumped out of the truck whom Mr. West identified as "Junior" and the victim. Mr. West said that the victim was angry because he believed that someone at the party had called the police on him. Mr. West stated that the victim was not armed, and both he and "Junior" had a beer can in their hands. Mr. West started "to ease on around the yard" because he believed that something was going to happen. He then heard gun shots, but his back was turned to the crowd. Mr. West said that he did not see the shooter. Mr. West stated that he did not see Defendant in possession of a gun before the incident.

## II. Sufficiency of the Evidence

On appeal, Defendant challenges the sufficiency of the evidence supporting his convictions of attempted first degree premeditated murder and aggravated assault. Specifically, Defendant points to the inconsistencies in the testimony of the State's witnesses which Defendant contends raises a reasonable doubt as to his guilt.

When a defendant challenges the sufficiency of the evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id*.; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

First degree murder is defined in relevant part as the "premeditated and intentional killing of another." T.C.A. § 39-13-202(a)(1). Premeditation refers to "an act done after the exercise of reflection and judgment." *Id*. § 39-13-202(d). Premeditation "means that the intent to kill must have been formed prior to the act itself." *Id*. However, the intent to kill may be formed in an instant and need not pre-exist in the mind of the accused for any definite period of time. *Id*. The existence of premeditation is a question of fact for the jury to determine and may be inferred from the circumstances surrounding the offense. *Bland*, 958 S.W.2d at 660. Premeditation may be inferred from circumstantial evidence surrounding the crime, including the manner and circumstances of the killing. *See State v. Pike*, 978 S.W.2d

904, 914 (Tenn. 1998); *State v. Addison*, 973 S.W.2d 260, 265 (Tenn. Crim. App. 1997). Facts from which the jury may infer premeditation include the use of a deadly weapon on an unarmed victim; the defendant's shooting of the victim after he had turned to retreat or escape; the lack of provocation on the part of the victim; the defendant's declarations of his intent to kill; the defendant's failure to render aid to the victim; the establishment of a motive for the killing; the particular cruelty of the killing; the defendant's procurement of a weapon, preparations to conceal the crime before the crime is committed, and destruction or secretion of evidence of the killing; and a defendant's calmness immediately after the killing. *State v. Thacker*, 164 S.W.3d 208, 222 (Tenn. 2005); *State v. Leach*, 148 S.W.3d 42, 54 (Tenn. 2004); *State v. Lewis*, 36 S.W.3d 88, 96 (Tenn. Crim. App. 2000) (citations omitted). The circumstantial evidence of premeditation must, however, be "so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." *State v. Crawford*, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971).

Attempt, as relevant to first degree murder, occurs when a person, "acting with the kind of culpability otherwise required for the offense . . . acts with the intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part." T.C.A. § 39-13-101(a)(2).

As Defendant points out, there were inconsistencies between Mr. Bradley's and the victim's trial testimony concerning the circumstances of the offense. For example, Mr. Bradley said that he did not make a "beer run" that night, while the victim testified that they left the party for a few minutes to go to the store. Defendant also submits that Ms. Jones' testimony that she never discussed the shooting with the victim is "implausible." Nonetheless, any inconsistencies and the assessment of the credibility of the witnesses is the province of the jury, and, by its verdict, the jury obviously accredited the testimony of the State's witnesses.

Viewing the evidence in a light most favorable to the State, the victim testified that he greeted Defendant at the gathering on Hampton Street and shook Defendant's hand. Defendant then stepped behind the victim, and the victim heard gunshots. Mr. Bradley testified that Defendant was sitting on the curb when he and the victim arrived at the party. The victim stood with his back turned toward Defendant as he greeted other partygoers. Mr. Bradley said that Defendant stood up and shot the victim in the back. There was no evidence of any altercation between Defendant and the victim prior to the shooting, or that the victim otherwise provoked Defendant to act. The victim and Ms. Jones testified that Defendant approached the victim a second time, pointed his gun at the victim, and threatened to shoot the victim in the head, again without provocation from the victim. The victim said that he repeatedly asked Defendant why he wanted to shoot the victim. Mr. Bradley stated that he did not see a weapon on anyone other than Defendant at the time of the incident. The victim stated that he confronted Defendant about the shooting after the victim was released from the

hospital. Defendant did not respond when the victim asked him why he had shot the victim. Based on the foregoing, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that Defendant was guilty of attempted first degree premeditated murder.

Count two of the indictment charged that Defendant "did unlawfully and knowingly commit an assault on [the victim] and cause serious bodily injury to the said [victim] in violation of T.C.A. [§] 39-13-102 . . . ." Count three of the indictment charged that Defendant "did unlawfully and knowingly commit an assault on [the victim] and by use of a deadly weapon, cause bodily injury to the said [victim] . . . ." As relevant here, Tennessee Code Annotated section 39-13-101(a)(1) provides that a person commits assault who "[i]ntentionally or knowingly causes bodily injury to another." A person commits aggravated assault who "intentionally or knowingly commits an assault as defined in [section] 39-13-101 and: (A) Causes serious bodily injury to another; or (B) Uses or displays a deadly weapon." T.C.A. § 39-13-102(a)(1). "'Bodily injury' includes a cut, abrasion, bruise . . . and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." *Id*. § 39-11-106(a)(2). "Serious bodily injury" is defined as "bodily injury that involves: (A) [a] substantial risk of death; (B) [p]rotracted unconsciousness; (C) [e]xtreme physical pain; (D) [p]rotracted or obvious disfigurement; or (E) [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty ." *Id*. § 39-11-106(a)(34).

Defendant was indicted in count two of the indictment for aggravated assault which caused serious bodily injury to the victim. The victim testified that he underwent surgery for the gunshot wound to his abdomen which damaged his lower intestines and other abdominal organs. The victim was hospitalized for approximately two and one-half weeks following his surgery, and he continued to experience health problems as a result of the wound. We conclude that a rational trier of fact could find Defendant guilty of aggravated assault causing serious bodily injury beyond a reasonable doubt.

Defendant was indicted in count three of the indictment for aggravated assault by use of a deadly weapon which caused bodily injury to the victim. Based on the facts above, we conclude that a rational trier of fact could find Defendant guilty beyond a reasonable doubt of aggravated assault by use of a deadly weapon which resulted in bodily injury to the victim. Defendant is not entitled to relief on this issue.

## III.  Double Jeopardy Principles

Notwithstanding the sufficiency of the convicting evidence, we are constrained to consider as plain error whether Defendant's multiple convictions violate double jeopardy protections. *See* Tenn. R. App. P. 36(b) (providing that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a

party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal"). Dual convictions resulting in a violation of a defendant's protection against double jeopardy constitute "plain error." *See State v. Lewis*, 958 S.W.2d 736, 738 (Tenn. 1997); *State v. Epps*, 989 S.W.2d 742, 745 (Tenn. Crim. App. 1998) (applying plain error doctrine to review whether the defendant's dual convictions violated double jeopardy principles).

In order for us to find plain error, "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'" *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).

The record clearly establishes that Defendant was convicted of both attempted first degree premeditated murder and two counts of aggravated assault. Second, multiple convictions for the same offense breach a clear and unequivocal rule of law. Third, a fundamental constitutional right of Defendant, his Fifth Amendment right to be free from double jeopardy, is affected. Fourth, the record is devoid of any evidence that Defendant waived the issue for tactical reasons. Fifth, we conclude that consideration of a violation of Defendant's double jeopardy protections is "necessary to do substantial justice." Accordingly, we will review this issue as plain error.

The double jeopardy clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Similarly, under our Tennessee Constitution, "no person shall, for the same offense, be twice put in jeopardy of life or limb." Tenn. Const. art. 1, § 10. Three fundamental principles underlie double jeopardy: "(1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense." *State v. Denton*, 938 S.W.2d 373, 378 (Tenn. 1996) (citations omitted). The case *sub judice* involves the third scenario, that is, multiple punishments for the same offense.

In determining whether two offenses are the "same" for double jeopardy purposes, the *Blockburger* test requires a comparison of the statutory elements of attempted first degree premeditated murder and aggravated assault. *Blockburger v. United States*, 284 U.S. 299, 307, 52 S. Ct. 180, 182; *State v. Black*, 524 S.W.2d 913, 919 (Tenn. 1975). "If each statutory provision setting forth the offense requires proof of an additional fact which the other does not, then the two offenses are not the same for federal double jeopardy protection purposes. *State v. Hall*, 947 S.W.2d 181, 183 (Tenn. Crim. App. 1997) (citing *Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182).

As relevant here, first degree murder is defined as the "premeditated and intentional killing of another." T.C.A. § 39-13-202(a)(1). Attempted first degree premeditated murder is committed when the accused, with premeditation, intentionally acts with the intent to cause the killing and believes his conduct will cause the victim's death without further conduct on his or her part. *Id*. § 39-13-101(a)(2). As charged in the indictment, aggravated assault requires proof that Defendant committed an assault on the victim involving bodily injury, and the bodily injury was serious or caused by the use of a deadly weapon. Thus, attempted first degree premeditated murder requires an intent to kill while aggravated assault does not. Aggravated assault requires an assault with the use of a deadly weapon or serious bodily injury, neither element of which is required to support a conviction of attempted first degree premeditated murder. Therefore, all three offenses are valid under the *Blockburger* test.

Nonetheless, in *State v. Denton*, 938 S.W.2d 373 (Tenn. 1996), "our supreme court extended double jeopardy protection under the Tennessee constitution beyond that provided by the federal constitution." *Hall*, 947 S.W.2d at 183. In addition to the *Blockburger* test, the trial court must consider the "same evidence" test as articulated *in Duchac*, that is whether the same evidence is required to prove the offenses. *Denton*, 938 S.W.2d at 381 (citing *Duchac v. State*, 505 S.W.2d 237, 239 (Tenn. 1973)). This test states in pertinent part:

> A defendant has been in jeopardy if on the first charge he could have been convicted of the offense charged in the second proceeding. One test of identity of offenses is whether the same evidence is required to prove them. If the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes.

*Duchac*, 505 S.W.2d at 239. Finally, the trial court must analyze whether there were multiple victims or discrete acts and compare the purposes of the respective statutes. *Denton*, 938 S.W.2d at 381.

It is apparent from a review of the record that the State relied on the same evidence to support Defendant's multiple convictions, that is, Defendant's shooting of the victim, with the gunshot wounds supporting both an attempted murder conviction in count one of the indictment and the aggravated assault convictions in counts two and three. *See Hall*, 947 S.W.2d at 183-84 (determining that convictions for attempted second degree murder and aggravated assault violated double jeopardy when the dual convictions were based on the same evidence, and the statutes preventing the crimes had the same purpose, that is "to prevent physical attacks upon persons"); *State v. Adams*, 973 S.W.2d 224, 229 (Tenn. Crim. App. 1997) (determining that a single attack by the defendant on the victim which provided the evidence to support the defendant's conviction of both attempted first degree murder and aggravated assault violated double jeopardy principles under the "same evidence" test in

Denton); *State v. Marques Lanier Bonds*, No. W2005-02267-CCA-R3-CD, 2006 WL 2663753, at \*9 (Tenn. Crim. App., at Jackson, Sept. 15, 2006), *no perm. to appeal filed* (determining that the defendant's convictions for attempted second degree murder and aggravated assault were the same for double jeopardy purposes because they were part of one continuous assault, with each gunshot being used to support dual convictions).

Because these convictions fail the *Duchac* prong of the test, we find as plain error that principles of double jeopardy bar Defendant's multiple convictions. We accordingly merge Defendant's two convictions of aggravated assault into his conviction of attempted first degree premeditated murder.

## IV. Photographic Lineup

Defendant argues that the trial court erred in admitting into evidence the photographic line-up used by Ms. Jones prior to trial to identify Defendant as the perpetrator of the offenses. Defendant contends that the prejudicial effect of this evidence outweighed its probative value because the jury might infer from the photograph that Defendant had a criminal record. Defendant also submits that the evidence was cumulative to the victim's, Mr. Bradley's and Ms. Jones' testimony identifying him as the shooter.

The admission of evidence at trial is entrusted to the broad discretion of the trial court, and, as such, a trial court's ruling on the admission of evidence may only be disturbed upon a showing of an abuse of that discretion. *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004) (citing *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997)). The trial court's exercise of discretion may not be reversed unless the court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997). Generally, "all relevant evidence is admissible" unless a particular constitutional provision, statute, or rule excludes it. Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

Ms. Jones did not witness the shooting, but she testified at trial that a man whom she knew as "Freaky" approached the victim after he had been shot and threatened to shoot him in the head, which testimony was relevant to the identification of Defendant as the shooter and the State's theory that Defendant acted with premeditation. However, Ms. Jones did not see anyone at trial, including Defendant, who resembled the man she knew as "Freaky." The

State, therefore, introduced the photographic lineup on which Ms. Jones had circled Defendant's photograph as the perpetrator.

Although Defendant contends the evidence was cumulative, Ms. Jones was the only witness, other than the victim, who was present during this encounter. Mr. Bradley testified that he ran from Defendant after the victim was shot and did not return to the crime scene until after the ambulance had arrived. Ms. Jones' testimony corroborated the victim's testimony about Defendant's threats after the shooting. Despite Defendant's protestations on appeal, his identity as the shooter was placed at issue at trial. At trial, the defense theory was that Mr. Brown shot the victim following an altercation. To support that theory, Mr. West testified that he did not see Defendant with a gun that night. Based on the foregoing, we conclude that the trial court did not abuse its discretion in overruling Defendant's objections on the basis that the photographic lineup was a "needless presentation of cumulative evidence." *See* Tenn. R. Evid. 403.

As for Defendant's claim of prejudice, the photographic line-up contains the photographs of six African-American men, including Defendant, who appear to be approximately the same age, build and complexion as Defendant. Defendant is wearing a black tee shirt and what appears to be a grey or white jacket or sweater. All the other men are in similar civilian attire, and there is nothing distinctive about Defendant's photograph. Nothing in the photographic lineup suggests that Defendant, or any of the other participants, has a prior criminal record. Based on our review, we conclude that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Accordingly, the trial court did not abuse its discretion in allowing the photographic lineup to be introduced as an exhibit at trial. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

-11-