IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

OCTOBER 1996 SESSION

FILED

March 26, 2008

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 02C01-9607-CC-00211** |
| Appellee, | ) | |
| | ) | **MADISON COUNTY** |
| VS. | ) | |
| | ) | **HON. FRANKLIN MURCHISON,** |
| **TIMOTHY WADE HALL, SR.,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Attempted second-degree murder; aggravated assault) |


FOR THE APPELLANT:                    FOR THE APPELLEE:


**GEORGE MORTON GOOGE**          **CHARLES W. BURSON**
Public Defender                              Attorney General & Reporter
227 W. Baltimore
Jackson, TN  38301                       **WILLIAM DAVID BRIDGERS**
   (On Appeal)                             Asst. Attorney General
                                            450 James Robertson Pkwy.
**PAMELA J. DREWERY**              Nashville, TN  37243-0493
Asst. Public Defender
227 W. Baltimore
Jackson, TN  38301                       **JERRY WOODALL**
   (At Trial)                               District Attorney General

                                         **DON ALLEN**
                                         Asst. District Attorney General
                                         P.O. Box 2825
                                         Jackson, TN  38302


OPINION FILED:_____



**AFFIRMED IN PART;**
**REVERSED IN PART.**



**JOHN H. PEAY,**
Judge

# **O P I N I O N**

The defendant was convicted by a jury of attempt to commit second-degree murder and aggravated assault. After a hearing, he was sentenced to twelve years on the attempt offense and eight years on the assault offense, to run concurrently. In this appeal as of right, the defendant argues that his two convictions must be merged; that the trial court erred in denying his motion for mistrial; and that his sentence is excessive. Finding merit in the first of these issues, we reverse and dismiss the defendant's conviction for aggravated assault. We otherwise affirm the judgment below.

The victim in this case, Elizabeth Webb, was the mother of the defendant's two children. At the time of the offenses, November 8, 1994, the defendant and victim had been living together for about a month. On the morning in question, the victim was sleeping on the couch. She awoke to find the defendant at her head, shocking her by holding bare wires in an extension cord to her neck. The victim testified that the defendant had shocked her approximately six times, causing her to be too weak to be able to get up and away. She testified that, while he had been attacking her, he told her, "Didn't I tell you I was going to kill you if I found out?" Eventually, the victim rolled off the couch. The defendant then ordered her into the bathroom to take a bath. She testified that, as she had reached the bathroom, she saw the tub full of water and a plugged-in radio nearby. She testified that the tub had not been full of water, nor the radio in that position, when she lay down on the couch. She further testified that she had thought the defendant intended to throw the radio into the tub after she got in it, thereby electrocuting her. For that reason, she refused to get into the bathtub and eventually talked the defendant into calming down.

The defendant's conduct caused a deep burn to the victim's neck, for which she sought medical treatment. She testified that it had also caused her to cough up

blood, bleed from her nose and mouth, and to have bad stomach pain.  The victim also testified that the defendant had threatened to kill her approximately a week and a half earlier.

In his first issue, the defendant contends that his two convictions should be merged, and the aggravated assault conviction dismissed, under State v. Anthony, 817 S.W.2d 299 (Tenn. 1991).  However, in light of our Supreme Court's recent decision in State v. Denton, ___ S.W.2d ___ (Tenn. 1996), an analysis under Anthony is unnecessary.

In State v. Denton, our Supreme Court extended double jeopardy protection under the Tennessee Constitution beyond that provided by the federal constitution.[1]  That is, while multiple convictions for a single criminal action may be permitted by the federal constitution under Blockburger v. United States, 284 U.S. 299 (1932), the result may be different under the Tennessee Constitution.  In order to determine whether multiple convictions for a single criminal action which violates two distinct statutes is permissible under Tennessee law, we must now go beyond the "Blockburger test" and engage in the following four prong inquiry: "(1) a Blockburger analysis of the statutory offenses; (2) an analysis, guided by the principles of Duchac [v. State, 505 S.W.2d 237 (Tenn. 1973)], of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes."  Denton, ___ S.W.2d at ___.  Morover, we are to keep in mind that "[n]one of these steps is determinative; rather, the results of each must be weighed and considered in relation to each other."  Id.

_____

[1]The double jeopardy clause of the Tennessee Constitution provides "[t]hat no person shall, for the same offence, be twice put in jeopardy of life or limb."  Tenn. Const., Art. I, Sec. 10.  Similarly, the United States Constitution provides "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."  U. S. Const., Amdt. 5.

3

The "Blockburger test" requires us to compare the statutory elements of the offenses of attempted second-degree murder and aggravated assault. See Blockburger v. United States, 284 U.S. 299, 304 (1932). If each statutory provision setting forth the offense requires proof of an additional fact which the other does not, then the two offenses are not the same for federal double jeopardy protection purposes. Id.

Second-degree murder is defined as "A knowing killing of another." T.C.A. § 39-13-210 (1991). Attempted second-degree murder is committed when the accused knowingly acts with the intent to cause the killing and believes his conduct will cause the death without further action, or knowingly acts with the intent to cause the death, under the circumstances surrounding the conduct as he believes them to be, and the conduct constitutes a substantial step toward the commission of the offense. T.C.A. § 39-12-101(a)(2), (3) (1991). Aggravated assault is an assault committed intentionally, knowingly or recklessly and which causes serious bodily injury to the victim or is committed by the use of a deadly weapon. T.C.A. § 39-13-102(a)(1) (1994 Supp). Thus, attempted second-degree murder requires an intent to kill; aggravated assault does not. Aggravated assault requires an assault with a deadly weapon, or an assault which causes serious bodily injury. Attempted second-degree murder requires neither. Therefore, the two offenses at issue in this case "pass" the Blockburger test.

However, the evidence used to prove both offenses in this case is the same: the defendant's repeatedly shocking the victim with the electrical cord. And while each specific shock was a discrete act, each was part of a single attack upon a single victim: analagous to multiple stabbings or multiple gunshots. Therefore, the principles of Duchac are met because the evidence used to prove the offenses was the same. Moreover, the purposes of the statutes prohibiting attempted murder and aggravated assault are the same: to prevent physical attacks upon persons. Weighing the results of each of the four prongs of the entire inquiry, we hold that the defendant's convictions for

4

attempted second-degree murder and aggravated assault are the "same" for double jeopardy purposes under our Constitution.  As our Supreme Court stated in Denton, "[i]t is unreasonable to assume that the legislature intended that a defendant who commits one assault on a single victim be convicted of both aggravated assault and attempted homicide." ___ S.W.2d at ___.  Accordingly, we reverse the defendant's conviction for aggravated assault and dismiss that charge.

In his next issue, the defendant contends that the trial court erred when it denied his motion for mistrial.  The defendant had moved for a mistrial after the victim testified about the defendant having been at the workhouse.  Specifically, after being asked on direct if the defendant had been living with her, she responded, "Yeah, when he came from the penal farm, yes.  Yes, he did."  Upon denying the defendant's motion, the trial court instructed the jury,

> Ladies and gentlemen, you are not -- you are to consider that [the defendant] here hasn't had any previous problems with the law before.  Some reference has been made about him being at the workhouse, but you are to consider that if he's been incarcerated, it's been on these very charges that you are trying him for.  As you know, it has already been brought out that he was arrested.

While we agree with the defendant that this instruction was less than perfect in that it told the jury to consider his prior incarceration to have been pursuant to an arrest for a crime he hadn't yet committed, we think it was effective insofar as it required the jury to assume that the defendant had no prior criminal record.  Juries are presumed to follow their instructions.  State v. Blackmon, 701 S.W.2d 228, 233 (Tenn. Crim. App. 1985).  Moreover, unlike the case in State v. Braden, 874 S.W.2d 624 (Tenn. Crim. App 1993), on which the defendant relies, this comment by the judge did not indicate to the jury that the defendant was presently in custody.  Thus, the defendant's constitutional right to the "physical indicia of innocence," Kennedy v. Cardwell, 487 F.2d 101, 104 (6th Cir. 1973), was not compromised.

The decision of whether to grant a mistrial is trusted to the sound discretion of the trial court, and we will not overturn that decision absent an abuse of that discretion. State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). "Generally, a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge." Id. (citation omitted). No such manifest necessity existed in the instant case. Accordingly, we find no abuse of discretion. This issue is therefore without merit.

Lastly, the defendant contends that his twelve year sentence on the attempted murder conviction is excessive. Because the offense is a Class B felony, T.C.A. §§ 39-12-107(a) (1991) and 39-13-210(b) (1991), and because the defendant was found to be a Range I standard offender with respect to this conviction, this was the maximum sentence available. T.C.A. § 40-35-112 (1990). In imposing this sentence, the trial court applied a single enhancement factor: the defendant's prior criminal history, which the court described as "extensive."[2] It also considered the nature of the offense. The trial court found no mitigating factors.

When a defendant complains of his or her sentence, we must conduct a de novo review with a presumption of correctness. T.C.A. § 40-35-401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40-35-401(d) Sentencing Commission Comments. This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A portion of the Sentencing Reform Act of 1989, codified at T.C.A.

---

[2]The defendant's prior criminal record included four felony convictions and numerous misdemeanor offenses, including two simple assaults.

§ 40-35-210, established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

T.C.A. § 40-35-210.

In addition, this section provides that the minimum sentence within the range is the presumptive sentence for B felonies. If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. If there are no mitigating factors, the court may set the sentence above the minimum in that range but still within the range. The weight to be given each factor is left to the discretion of the trial judge. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The Act further provides that "[w]henever the court imposes a sentence, it shall place on the record either orally or in writing, what enhancement or mitigating factors it found, if any, as well as findings of fact as required by § 40-35-209." T.C.A. § 40-35-210(f) (emphasis added). Because of the importance of enhancing and mitigating factors under the sentencing guidelines, even the absence of these factors must be recorded if none are found. T.C.A. § 40-35-210 comment. These findings by the trial judge must be recorded in order to allow an adequate review on appeal.

Although the trial court stated that it was applying only one enhancement

7

factor, it also specifically found "[e]xceptional cruelty [to be] there[.]" The court did not apply this factor, stating, "I think it is built into the offense." We respectfully disagree with the court below. The enhancement factor dealing with exceptional cruelty applies where "[t]he defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense." T.C.A. § 40-35-114(5) (1994 Supp). This conduct is not an element of attempted second-degree murder. See T.C.A. §§ 39-12-101; 39-13-210 (1991). Thus, it may properly be considered as an enhancement factor in the commission of this offense. We also note that a third enhancement factor is properly applicable in this case, because the personal injuries inflicted on the victim were "particularly great." T.C.A. § 40-35-114(6) (1994 Supp).

Where three enhancement factors apply, and no mitigating factors, the maximum sentence is appropriate. The defendant has not carried his burden of proving that the sentence is improper. Accordingly, we affirm the defendant's sentence on the attempted murder conviction.

For the reasons set forth above, the defendant's conviction for aggravated assault is reversed and the charge dismissed. The judgment below is otherwise affirmed.

_____
JOHN H. PEAY, Judge

CONCUR:


_____
PAUL G. SUMMERS, Judge


_____
DAVID G. HAYES, Judge