IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2008

## STATE OF TENNESSEE v. TONY CURTIS HOLMES

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-03960     Lee V. Coffee, Judge**

---

**No. W2007-02733-CCA-R3-CD   -   Filed September 24, 2009**

---

The defendant, Tony Curtis Holmes, was convicted of one count of first degree premeditated murder and one count of attempted first degree premeditated murder, a Class A felony. He was sentenced to consecutive life sentences. On appeal, he contends that the trial court abused its discretion in three areas: failing to grant a mistrial; allowing irrelevant testimony; and allowing hearsay testimony. After careful review, we conclude no error exists and affirm the judgments from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

James E. Thomas, Memphis, Tennessee, for the appellant, Tony Curtis Holmes.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth B. Marney, Senior Counsel; William L. Gibbons, District Attorney General; and Amy Weirich and David Pritchard, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

This case involves the murder of Lindsey Gilland, who was a bystander caught in the middle of a shooting. Testimony at trial revealed that the defendant intended to shoot Doyan McGory but, instead, shot the victim when McGory grabbed the victim and used him as a shield.

Jeannie Stewart testified at trial that she was walking by a business, the Crankshaft Specialist, on May 19, 2004, when she saw the defendant park his car on the street, exit the car carrying a gun, walk in front of his car, approach the intended victim, and point the gun at him. The intended victim grabbed the victim and used him as a shield. The defendant fired the gun, shot the victim in the chest, and then fled the scene. Stewart testified that she had known the defendant for twenty years and had no doubt about his identity. She alleged that she was reluctant to testify because she knew that people in the community considered her a "snitch." On cross-examination, she testified that she

told the officers at the scene that she knew nothing about the shooting but clarified that she meant she did not know the reason the defendant would attempt to kill McGory.

An employee of Crankshaft Specialist testified that he was working on May 19, 2004, when he saw the victim sitting on a milk crate talking to McGory prior to the killing. He looked out the rear door of the business and saw the defendant exit his car with a gun. He observed him approach the victims and saw McGory "bobbing and weaving" behind the victim.

Phyllis Tuggle testified and denied telling police that the defendant was in the neighborhood on the date of the shooting. She further denied telling police that McGory had threatened to kill the defendant.

An officer with the Memphis Police Department testified that he responded to the shooting incident and found the victim in a gray Cadillac. After the officer spoke with people at the crime scene, the defendant was considered as a suspect. Another officer with the Memphis Police Department testified that he also responded to the scene and received information that the defendant fled the scene in a gray Chevrolet Celebrity. The vehicle was later recovered, but no evidence was found in the vehicle.

A sergeant with the Memphis Police Department who investigated the shooting testified that he interviewed Ms. Tuggle and that she told him she spoke to the defendant on the date of the shooting. He testified that Ms. Tuggle told him that the defendant said McGory had shot at the defendant's brother on one occasion and had chased the defendant with a machete earlier on the day of the shooting. The sergeant notified federal authorities that the defendant had fled to Flint, Michigan. He said that Flint police arrested the defendant on June 4, 2004.

A trooper with the Michigan State Police testified that he assisted the U.S. Marshall Service in apprehending the defendant. He arrested the defendant on June 4, 2004, in Flint, Michigan.

The forensic pathologist who performed the autopsy on Gilland testified that he died of a single gunshot wound to the chest.

A witness for the defendant testified that she witnessed the shooting and that she did not identify the defendant from the police photographic line-up.

A professor of psychology at Florida State University testified as an expert in the area of eyewitness identification on behalf of the defendant. He testified that a number of factors could influence the reliability of an eyewitness identification.

Analysis

On appeal, the defendant argues that the trial court erred in not granting a mistrial after witness Jeannie Stewart testified that she had not seen the defendant in years because he had been "locked up." The determination of whether to grant a mistrial rests within the sound discretion of the trial court. *State v. Smith*, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not

overturn that decision absent an abuse of discretion. *State v. Reid*, 91 S.W.3d 247, 279 (Tenn. 2002). The burden of establishing the necessity for mistrial lies with the party seeking it. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). Tennessee courts do not apply any rigid test when examining the failure to grant a mistrial after a witness has given improper testimony, but there are certain factors that are often considered, namely: (1) whether the improper testimony was elicited by the State or whether it was a spontaneous declaration by the witness; (2) whether the case against the defendant was strong or weak; and (3) whether the trial court gave a prompt curative instruction. *See, e.g., State v. Hall*, 976 S.W.2d 121, 147-48 (Tenn. 1998) (holding that improper testimony about a defendant's prior crime did not create a manifest necessity for a mistrial because the trial court gave an immediate curative instruction); *State v. Mathis*, 969 S.W.2d 418, 422 (Tenn. Crim. App. 1997) (holding that improper testimony did not create a manifest necessity for a mistrial because the trial court gave a prompt curative instruction); *State v. Hall*, 947 S.W.2d 181, 184 (Tenn. Crim. App. 1997) (holding that improper testimony about a defendant's prior incarceration did not create a manifest necessity for a mistrial because trial court gave a prompt curative instruction).

Here, the witness observed that she had not seen the defendant because he was "locked up." The witness offered this observation as a nonresponsive answer to another question. The trial court *sua sponte* instructed the jury to disregard the witness's nonresponsive answer to the prosecutor's question. A prompt curative instruction after a spontaneous declaration will often obviate the need for a mistrial. Moreover, the State's case against the defendant was strong. There were multiple eyewitnesses who testified that the defendant shot the victim while trying to shoot Doyan McGory. Given this evidence, the witness's mention that the defendant had been incarcerated did not undermine the fairness of the trial. Thus, a mistrial was not necessary to guarantee a fair trial for the defendant.

Next, the defendant argues that the trial court erred in allowing Jeannie Stewart to testify about "snitches" in the neighborhood. When asked by the State, "[w]hat do they say about snitches in Binghampton?" the witness replied, "It's not good." The witness indicated that the belief in the neighborhood was that it was not good to be a "snitch" and that she received some pressure not to testify. The defendant contends that the question was not relevant and was merely a tactic by the prosecution to bolster the credibility of the witness. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Once the court concludes the evidence is relevant, the court should exclude the evidence if its probative value is substantially outweighed by its prejudicial effect. Tenn. R. Evid. 403; *State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002). A trial court's decision as to the relevance of evidence under Rule 401 will be reversed only upon a showing of abuse of discretion. *State v. Powers*, 101 S.W.3d 383, 395 (Tenn. 2003).

The trial court explained the reason for viewing the testimony about "snitches" as relevant. The trial court stated:

-3-

The court has told the jury and will tell the jury in credibility instructions that the things they can consider are motive and reasons and other reasons as to why witnesses testify and that goes to credibility as to whether or not she wants to be here, is comfortable being here. It all goes to credibility and these are things that the court will instruct the jury that they consider are credibility and these are things that the court will instruct the jury that they consider are credibility, motive, reasons for testifying, the demeanor of a witness. And the court will overrule your objection as far as relevance. The court does find that it's relevant and is an issue [that is] fully in the province of the jury so the court will overrule the objection.

The trial court's determination that the question about "snitches" was relevant to the jury's determination of the witness's credibility was within the court's discretion. The defendant has not shown that he was unfairly prejudiced by the statement or that any prejudice outweighed the probative value of the statement. The defendant has not demonstrated that the trial court abused its discretion in determining that the statement was relevant. Therefore, the defendant is not entitled to relief on this issue.

Next, the defendant argues that the trial court erred in allowing the sergeant to testify to double hearsay from another Memphis Police Department officer. The trial court determined that the statements were not offered for their truth but, rather, to demonstrate the efforts the police made to locate the defendant.

The sergeant was asked "what other efforts or attempts were made to locate" the defendant in Tennessee. He responded that he received information from another Memphis Police officer and then began to testify as to what the other officer stated. The defendant raised a hearsay objection to this question. The trial court overruled the objection and stated that "[t]hese statements are not being made for the truth of the matter asserted but just to show what this officer did in order to try to locate [the defendant] and the efforts that they did and why [he] put those efforts forward." The sergeant answered that the information he received from the other officer was about the defendant's whereabouts.

The sergeant was then asked about what the defendant's ex-wife told the other officer. The defendant again objected to the question as eliciting a hearsay response. The trial court again ruled that the statements were not being offered for the truth of the matter asserted but to show why the officer did what he did to locate the defendant. The sergeant testified that the other officer advised him that the defendant's ex-wife told him that the defendant "had gone to Flint, Michigan, to keep from being arrested here." The sergeant then testified as to the steps he took to involve the U.S. Marshall's office in the search for the defendant.

Rule 801(c), of the Tennessee Rules of Evidence defines hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

The trial court relied on *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987), to reject the defendant's hearsay challenge. This court, in *Miller,* concluded that the hearsay evidence

rule does not operate to exclude every statement made to a witness by a third person. The court further stated that when the statement was admitted to show an officer's reason for doing something based on the statement, the statement is admissible because the testimony is not being offered to prove the truth of the matter asserted by the out-of-court declarant. *Miller*, 737 S.W.2d at 559.

The first statement, when the sergeant testified that the other officer gave him information regarding the defendant's whereabouts, is not hearsay under *Miller*. The statement was offered to show that the officer gained information about the defendant's whereabouts from the other officer.

The next statement, that the sergeant received information that the defendant's ex-wife told an officer that the defendant "had gone to Flint, Michigan, to keep from being arrested here," should not have been admitted. "However, the testimony about why the officer did a certain act may be irrelevant or barely relevant in the case, and the more recent trend is to rule such testimony inadmissible under Rule 403." Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, Tennessee Law of Evidence § 8.01[7] (5th ed. 2005). The sergeant should not have been permitted to testify that the defendant left Tennessee "to keep from being arrested here," because the probative value of that statement was substantially outweighed by the danger of unfair prejudice. *State v. Brown*, 915 S.W.2d 3, 6 (Tenn. Crim. App. 1995). Rule 403 of the Tennessee Rules of Evidence gives the trial court discretion to exclude evidence when its probative value is substantially outweighed by its prejudicial effect. Here, the trial court should have excluded the testimony as given. *Brown*, 915 S.W.2d at 6. The testimony implies the defendant's guilt and should have been excluded.

We must next decide whether the error requires reversal. We will reverse a conviction only if it affirmatively appears from the record that the error more probably than not affected the judgment. T.R.A.P. 36(b); *Brown*, 915 S.W.2d at 7. Here, there were two eyewitnesses to the shooting who testified that the defendant was the shooter. Another witness told police that there had been a violent incident between the defendant and McGory earlier in the day. It is unlikely that the error in allowing the sergeant to testify that the defendant fled to Michigan to avoid prosecution affected the judgment. Therefore, this error is harmless.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

-5-