IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

OCTOBER 1997 SESSION

FILED

December 3, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. No. 01C01-9610-CC-00426 |
| | ) | |
| Appellee, | ) | DICKSON COUNTY |
| | ) | |
| VS. | ) | HON. ROBERT E. BURCH, |
| | ) | JUDGE |
| JEFFERY S. SPANN, | ) | |
| | ) | (Second Degree Murder) |
| Appellant. | ) | |

**FOR THE APPELLANT:**

**DAVID D. WOLFE**
304 East College Street
Dickson, TN 37055

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**KAREN M. YACUZZO**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

**DAN MITCHUM ALSOBROOKS**
District Attorney General

**ROBERT S. WILSON**
Assistant District Attorney General
P. O. Box 580
Charlotte, TN 37036

**OPINION FILED:** _____

**REVERSED AND REMANDED**

**JOE G. RILEY,**
**JUDGE**

**O P I N I O N**

The defendant, Jeffery S. Spann,[1] was convicted by a Dickson County jury of second degree murder and received the maximum Range I sentence of twenty-five (25) years. On appeal, he presents the following issues for our review:

(1) whether the evidence was sufficient to support the conviction;

(2) whether the trial court erred by allowing the state to introduce a pre-trial statement by the defendant regarding his understanding of the law of self-defense;

(3) whether the trial court erred by allowing the state to introduce threats allegedly made by the defendant prior to the shooting;

(4) whether the trial court erred by denying defendant's request for a mistrial after a witness mentioned defendant's drug involvement;

(5) whether the trial court erred by prohibiting the defense from introducing evidence of the presence of cocaine in the deceased's body; and

(6) whether the sentence was excessive.

We find the trial court erred by not granting a mistrial; therefore, we reverse and remand for a new trial.

## FACTS

The state's theory at trial was that the defendant unlawfully took the life of the victim because of jealousy relating to defendant's former girlfriend. According to the state's proof, the homicide occurred after defendant learned that the victim had been spending time with his former girlfriend. The defendant claimed self-defense.

The homicide occurred at approximately 1:30 a.m. on a Sunday. On the preceding Saturday morning, defendant learned that the victim had been spending time with his former girlfriend. The former girlfriend testified that the defendant was jealous and possessive.

---

[1] Defendant's name is also spelled "Jeffrey" in various pleadings.

2

On that Saturday the defendant secured his two-shot .357 magnum derringer from his mother's residence. He stated to a friend that he needed to get out of "all of this shit" in Dickson; otherwise, "he was going to kill somebody today."

Defendant then went to Nashville where he saw the victim. Defendant asked the victim if he had seen his former girlfriend, and the victim replied in the negative. A person who was with defendant at the time of this conversation testified that the defendant stated he believed the victim was with his former girlfriend. The defendant seemed "pretty jealous."

Defendant returned to Dickson and went to a tavern. While there he talked to one of his friends and spoke of his former girlfriend. He further stated "he ought to go kill them both." Defendant then displayed an open hawk bill knife. The homicide occurred approximately two (2) hours after this conversation.

There were no eyewitnesses to the actual homicide which took place outside the defendant's residence. Defendant testified that upon leaving the tavern he went to the Waffle House for about an hour. When he returned to his residence, he stated he pulled in his driveway and observed the victim, who was his best friend, highly intoxicated and kicking the defendant's Rottweiler dog. The victim's truck had the dog trapped against a fence. According to the defendant's testimony, he asked the victim to leave the dog alone resulting in the victim shoving the defendant. Defendant asked the victim to leave, whereupon the victim entered his vehicle. Defendant then secured the derringer from inside his residence. The victim backed up his vehicle in the driveway, jumped out, cursed the defendant and pushed the defendant to the ground. Defendant told the investigating officer that, knowing the victim was very violent when he was intoxicated, he fired one shot toward the victim from approximately fifteen (15) to twenty (20) feet away. It is undisputed that the victim died as a result of this gunshot wound to the chest.

The autopsy report revealed that the victim had a blood alcohol concentration of .23%. Several witnesses testified that the victim, who was six (6) feet five (5) inches tall and weighed approximately 240 pounds, had a reputation for violence when he was intoxicated. One of these witnesses was a police officer who testified

3

that the victim, who was intoxicated at the time, violently assaulted him in a tavern.

On the other hand, the state's proof showed the following:

(1)     the victim did not have a weapon and had never hit the defendant prior to this occasion;

(2)     prior to this occasion the defendant had been told by an attorney that he could "kill one a day as long as it was self-defense";

(3)     although defendant claimed the victim pushed him to the ground, there were no grass stains, dirt or marks on defendant's clothing;

(4)     the neighbors heard no loud talking or shouting prior to the gunshot, which was contrary to defendant's testimony that the victim was highly intoxicated, angry and cursed the defendant;

(5)     neighbors testified that only ten to twenty seconds passed from the time they heard an automobile drive into the driveway until the time they heard the gunshot;

(6)     according to the pathologist, the gun was only eight to twelve inches from the victim at the time of the shooting; and

(7)     the bullet's trajectory was from top to bottom.

The state theorized in final argument that the trajectory indicated that the victim was either in his vehicle or just exiting his vehicle when the shot was fired. In essence, the state argued the defendant did not fire in self-defense.

## SUFFICIENCY OF THE EVIDENCE

### A.

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. Id. This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty

4

beyond a reasonable doubt.  State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).  Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e);  Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 61 L. Ed.2d 560 (1979);  State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

## B.

The defendant was convicted of second degree murder.  Second degree murder is the knowing killing of another.  Tenn. Code Ann. § 39-13-210(a)(1).  In this case, the state also had the burden of proving beyond a reasonable doubt that the killing was not in self-defense.  Tenn. Code Ann. § 39-11-203(d).

Looking at the evidence in a light most favorable to the state, the evidence is sufficient to support the verdict of guilty of second degree murder.  Much of the evidence was inconsistent with the defendant's version that he acted in self-defense. It was clearly a jury issue as to whether the defendant acted in self-defense.

This issue is without merit.


## DEFENDANT'S UNDERSTANDING OF SELF-DEFENSE


Shortly after the defendant's arrest, he was interrogated.  During this interrogation the defendant stated that, prior to this incident, he had been told by his lawyer that he could "kill one a day as long as it was self-defense."  Defendant contends that the admission of this statement at trial was irrelevant, prejudicial and should have been excluded.

It is the state's contention that the defendant claimed self-defense simply because of his prior knowledge that he could be exonerated based upon this defense.  We agree that this evidence was relevant to show why defendant insisted on self-defense during the interrogation.

This issue is without merit.

5

## PRIOR THREATS

One of the defendant's friends testified that he saw the defendant in a tavern shortly prior to the homicide. The defendant spoke of his former girlfriend and stated, "[h]e ought to kill them both." He then displayed an open knife. This occurred approximately two (2) hours prior to the homicide.

Defendant contends this evidence was irrelevant and the prejudice clearly outweighs probative value. *See* Tenn. R. Evid. 403. We disagree. Although the defendant does not mention the victim by name, it is a reasonable inference from all the evidence that the defendant was referring to the victim and the defendant's former girlfriend. Obviously, a defendant's expressed intent to kill is highly relevant to a homicide prosecution. Tenn. R. Evid. 401; State v. Gentry, 881 S.W.2d 1, 6 (Tenn. Crim. App. 1993).

This issue is without merit.

## REFUSAL TO GRANT MISTRIAL

### A.

On the day prior to the homicide, the defendant and a friend went to Nashville. The friend testified as a state witness. When asked why she and the defendant went to Nashville, she stated, "[w]e went to pick up some drugs." An objection and request for mistrial immediately ensued. It is undisputed that this response was not intentionally solicited, nor was it anticipated by the prosecution.

An extensive jury-out hearing followed the objection and request for mistrial. The trial court remarked that "the reaction from the jury was real strong," and there "were some rather shocked faces on the jury." Upon the prosecuting attorney suggesting that the jury might think the witness was talking about going to a pharmacy, the trial court responded, "[y]es, and let's wait for the Easter Bunny." Defense counsel noted that there was, in fact, an audible reaction to the testimony.

The trial judge suggested that the jury be *voir dired* as to the effect of the testimony. Defense counsel objected stating this would simply reinforce what they

6

had heard. Likewise, the district attorney general agreed that this would make the "bell ring louder."

The judge again remarked that the statement obviously had an effect upon the jury, and "I don't see how [a *voir dire* of the jury] can do any worse." The trial court then made the following comments:

> But just the normal human tendency to say, "Well, if this fellow was on drugs, then he might have done other bad things, too." That's the reason that the Courts are so concerned about a defendant being convicted of one crime because of being involved in something else. And that's why it's prejudicial here.
>
> You know, if this guy was on drugs, then he would be more likely to commit a murder than someone who was not. That's the reason I think it's so prejudicial.

The court further noted the possibility that the jury, after an admonishment, might be more likely to return a defendant's verdict. The district attorney general agreed with this concern.

The trial court then noted that he would conduct an individual *voir dire* "against all the advice that [defense counsel and the two prosecuting attorneys] have given." All fourteen (14) jurors were individually *voir dired* by the trial court, and all explicitly recalled the testimony concerning drugs. Each juror was informed by the court that this testimony would not have been admitted by the court. Each juror was asked if he or she could disregard the testimony in reaching a verdict. The jurors stated the testimony would be disregarded; however, at least four (4) jurors were somewhat equivocal at some point in their *voir dire*. Two (2) of these jurors were excused by the court. The other two (2) jurors who respectively stated, "I believe so" and "I think so" remained on the panel.

After the trial court's individual *voir dire*, the district attorney general stated that all jurors clearly remembered the exact testimony, he feared it would raise the state's burden of proof, and he further agreed with defense counsel that "the bell got run pretty loudly."

The trial court noted his satisfaction that the remaining twelve (12) jurors would not consider the testimony against either the defendant or the state. The court further noted that if the issue is brought up in deliberations, "I can guarantee you at

7

least three (3) jurors will immediately stop that problem."[2]  The request for mistrial was denied.

**B.**

The determination of whether to grant a mistrial rests within the sound discretion of the trial court.  State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994).  The reviewing court should not overturn that decision absent an abuse of discretion.  State v. Hall, 947 S.W.2d 181, 184 (Tenn. Crim. App. 1997).  The burden of establishing the necessity for mistrial lies with the party seeking it.  State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).  In making this determination, no abstract formula should be mechanically applied, and all circumstances should be taken into account.  State v. Mounce, 859 S.W.2d 319, 322 (Tenn. 1993).

**C.**

We have examined numerous cases in which the failure to grant a mistrial has been sustained on appeal.  In fact, it is clearly the exception when the reviewing court finds an abuse of discretion in the denial of a mistrial.  However, our review of these cases does not reveal such extensive observations of prejudice made by the trial court as in the case at bar.  Furthermore, the observations in this case support the necessity of the granting of a mistrial.

A summary of some of the events and observations made by the trial court upon the request for mistrial includes the following:

(1)     the reaction from the jury was very strong and revealed "shocked faces";

(2)     it was apparent to the jury that the witness referred to defendant's involvement with illicit drugs and not legal prescription drugs;

(3)     due to the nature of the prejudice, an individual *voir dire* could not make it any worse;

(4)     due to the tendency to find a predisposition to commit another  offense if there is drug involvement, there was prejudice;

(5)     individual *voir dire* was conducted over objection of both the state and the defense who felt it would reinforce the effect of the improper testimony;

---

[2]The trial court did not specify these jurors by name.

(6)	each juror was individually told by the trial court the drug evidence should not have been admitted and questioned as to whether the juror could disregard it;

(7)	the improper testimony was explicitly recalled by all jurors;

(8)	two (2) jurors who remained on the panel were at least somewhat equivocal as to whether the evidence could be completely disregarded; and

(9)	after the individual *voir dire,* both the prosecution and the defense agreed "the bell got rung pretty loudly."

Based upon the express observations of prejudice by the trial court, the undisputed proof and the agreement at the time of both the state and the defense that a mistrial should be granted, this Court has no alternative but to find that the trial court erred in denying the request for mistrial.

## ADMISSIBILITY OF PRESENCE OF COCAINE IN VICTIM'S BODY

Next, defendant complains the trial court erred in its exclusion of medical testimony concerning the presence of cocaine in the victim's body and its effect upon the victim's behavior. We agree.

The pathologist testified that the victim's blood alcohol concentration was .23%. In a jury-out hearing, the pathologist further testified concerning the presence of a small amount of cocaine. Upon being asked in the jury-out hearing whether the presence of cocaine in addition to the alcohol would make a person more aggressive, the pathologist testified that, "[o]n most occasions it probably would, but I can't say it would on all occasions." The pathologist noted that cocaine affects different people in different ways and, in this instance, would be the equivalent of raising the blood alcohol concentration from .23% to .27%. The trial court found that injecting the issue of cocaine into the trial would make the testimony more prejudicial than probative.

Although this is a close issue, we find the testimony should have been admitted. The sole issue in this case was one of self-defense based upon testimony that the victim became very violent depending upon his degree of intoxication.

9

Therefore, the presence and extent of any intoxicating substances were relevant. It would be a jury question as to the weight, if any, to be given to this testimony. We simply conclude the jury should not have been deprived of the testimony.

This erroneous exclusion of evidence may have been harmless error in and of itself. However, since the case must be remanded for a new trial due to the failure to grant a mistrial, this evidence will be admissible at the new trial.

## SENTENCING

Defendant contends his maximum 25-year Range I sentence for the Class A felony of second degree murder was excessive. Although the issue appears moot since the case must be remanded for retrial, the issue should be addressed for appellate purposes.

The presumptive sentence for a Class A felony, unlike a Class B, C, D or E felony, is the midpoint of the range absent enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). Therefore, the presumptive Range I sentence is twenty (20) years absent enhancement or mitigating factors.

In this case, however, the court found three (3) enhancement factors; namely, (1) defendant had a previous history of criminal convictions (Tenn. Code Ann. § 40-35-114(1)); (2) defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community (Tenn. Code Ann. § 40-35-114(8)); and (3) defendant employed a firearm during the commission of the offense (Tenn. Code Ann. § 40-35-114(9)). These enhancement factors are not contested by the defendant.

Instead, defendant contends the trial court erred in refusing to find the following mitigating factors: (1) the defendant acted under strong provocation (Tenn. Code Ann. § 40-35-113(2)); (2) substantial grounds existed tending to justify the defendant's criminal conduct (Tenn. Code Ann. § 40-35-113(3)); and (3) the defendant committed the offense under such unusual circumstances that it was

10

unlikely that a sustained intent to violate the law motivated his conduct (Tenn. Code Ann. § 40-35-113(11)). The trial court specifically found that none of these mitigating factors was supported by the evidence. Our review does not indicate the trial court erred in rejecting these mitigating factors. Accordingly, the trial court appropriately sentenced the defendant to the maximum term.

## <u>CONCLUSION</u>

The conviction is reversed and the case remanded for a new trial.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**JOE B. JONES, PRESIDING JUDGE**

_____
**WILLIAM M. BARKER, JUDGE**

11