IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2013

## TIMOTHY CHRISTOPHER PILLOW v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009D2885    Cheryl A. Blackburn, Judge**

_____

**No. M2013-00278-CCA-R3-PC - Filed February 11, 2014**

_____

The Petitioner, Timothy Christopher Pillow, appeals the Davidson County Criminal Court's denial of post-conviction relief from his conviction for especially aggravated robbery. In this appeal, the Petitioner argues that he received ineffective assistance of counsel. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Andrew Chambers Beasley, for the Defendant-Appellant, Timothy Christopher Pillow.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Bradshaw, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

This appeal stems from the robbery of Joseph Manna on February 26, 2008. The Petitioner was subsequently indicted and convicted for especially aggravated robbery for his involvement in the robbery.

**Facts.** On the evening of the robbery, the victim, Joseph Manna, was waiting for his roommate to come pick him up at the front entrance of the Riverchase apartment complex when he was approached by two men, later determined to be the Petitioner and his co-Defendant, Deonte Matthews. The men asked the victim if he wanted to wait inside an apartment because it was cold outside and the victim agreed. Once inside the apartment, the

victim told the men that he had his Xbox and some video games with him if they wanted to set it up while he waited on his ride. Shortly thereafter, he was hit in the head with a revolver, and then watched as one man riffled through his belongings while the other man held the gun to his head. He was then told that he "need[ed] to get out of this apartment right now." He fled the apartment and called 911 from a nearby apartment. When police arrived, the victim had already been taken to the hospital and the two suspects had fled the scene. Police spoke with Latisha Burns, the resident of the apartment where the robbery took place, and her niece, Tanique Harrison, both of whom had been at the apartment on the night of the robbery. Although both women initially lied to police about the events of that night, they later told police the truth and identified the Petitioner and co-Defendant Matthews as the men who robbed the victim.

At trial, the victim testified about the robbery and identified the Petitioner in court as one of the men that robbed him. He also testified that he had identified the Petitioner and co-Defendant Matthews from a photographic lineup shown to him by police. Detective Paul Harris of the Metropolitan Nashville Police Department, created two photographic lineups with photos of co-Defendant Matthews and the Petitioner based upon nicknames of the perpetrators given to him by Ms. Burns and Ms. Harrison. He testified that the victim identified co-Defendant Matthews as the man who went through his belongings, but was unable to identify the Petitioner. Ms. Burns and Ms. Harrison both identified co-Defendant Matthews and the Petitioner from the lineups as the men who robbed the victim. Ms. Burns and Ms. Harrison also testified at trial about the night of the robbery and identified the Petitioner as one of the men who robbed the victim. Following deliberation, the jury convicted the Petitioner of especially aggravated robbery. This Court affirmed the conviction on direct appeal. See State v. Timothy Christopher Pillow, No. M2010-02107-CCA-R3-CD, 2011 WL 6291810 (Tenn. Crim. App. Dec. 13, 2011), perm. app. denied (Tenn. April 20, 2012).

The Petitioner filed a timely petition for post-conviction relief, alleging ineffective assistance of counsel and violations of his Fifth and Fourteenth Amendment rights. The Petitioner was subsequently appointed counsel, and an amended petition was filed on the Petitioner's behalf.

**Post-Conviction Hearing.** At the October 24, 2012 post-conviction hearing, the Petitioner testified that his family hired trial counsel ("Counsel") to represent him at trial. He believed that as a paid attorney, Counsel would "know what was best for [him] . . . so [he] just let [Counsel] do his job." He recalled that he received discovery and spent two or three months "dissect[ing]" it to understand the evidence the State had against him. He asked Counsel to speak to one of the State's witnesses, Tanique Harrison, because he did not recognize the witness's name, but Counsel told him that he could not get in touch with her

because he did not have valid contact information for her. He also asked Counsel to file various motions that he had "read up on through Westlaw" to get "evidence that was flimsy [thrown] out" but Counsel failed to do so.

The Petitioner recalled that during trial, the victim testified that he had identified the Petitioner in a photographic lineup. The Petitioner first testified that Counsel showed the victim the photographic lineup during cross-examination that proved that he did not identify the Petitioner, and then later agreed that if the trial transcript reflected that Counsel showed the photographic lineup to Detective Harris rather than the victim, he would agree with the trial transcript. The Petitioner also recalled that Detective Harris testified that the Petitioner "had just gotten out of the pen," but did not recall Counsel moving for a mistrial. The Petitioner testified that prior to trial he and Counsel discussed whether he should testify and Counsel told him "that it was in [his] best interest not to testify because of [his] prior [criminal] record." He did not recall having any further discussions about testifying after the State's witness testified that he had recently been incarcerated.

On cross-examination, the Petitioner clarified that he believed Counsel should have filed motions concerning inconsistent statements, insufficient identification, and suppressing a victim's statement. He also clarified that he "never said [Counsel] wouldn't let [him] testify," but just that Counsel told him it was in his best interest not to testify and he trusted Counsel. He agreed that it was his decision not to testify after listening to Counsel's advice, and confirmed that he signed a Momon form prior to trial affirming that he voluntarily and personally chose to waive his right to testify at trial.

Counsel testified that the Petitioner asked him to file several motions in the case in an attempt to exclude some of the State's evidence, but opined that there were no motions to file to exclude the evidence that the Petitioner thought should be excluded. He explained that inconsistent statements and weak identifications are matters for the jury to consider. Counsel recalled that there were several witnesses in discovery with the same nickname, including Tanique Harrison, and that he was only able to discovery their actual identities shortly before trial. He stated that he did not have an opportunity to speak to Ms. Harrison before trial, but that he "had an idea of what she was going to say" based on her statements in discovery.

Counsel recalled that the State had not provided a copy of the photographic lineup showing that the victim was unable to identify the Petitioner. He explained that he spoke with prosecutors before trial and "there was no question that [the victim] had never identified [the Petitioner] . . . so that was a non issue as we went into trial." He believed that the victim's testimony that he had identified the Petitioner in the photographic lineup caught the State "completely off guard" because it was not true. Counsel agreed that the victim

identified the Petitioner in the courtroom and that "[u]ltimately the jury heard that [the victim] could not identify" the Petitioner in the lineup through the testimony of Detective Harris; nevertheless, he was still "disappointed" that he could not impeach the victim during cross-examination with the photographic lineup.

Counsel could not recall whether he considered asking for a mistrial after Detective Harris testified that the Petitioner had "just gotten out of the pen." He noted that it "may have been in a better course on [his] part to have asked for a mistrial[,]" but he did not in this particular case. He opined that the judge had already given a curative instruction so he would not get very far in calling for a mistrial, and explained that he did not want to "underscore and highlight" the issue any more for the jury. With regard to the Petitioner's decision whether to testify, Counsel advised the Petitioner not to testify because the Petitioner "had a record of criminal convictions that [Counsel] thought would be adverse to him being cross-examined . . . in front of a jury." He further opined that the Petitioner's testimony would not elicit anything beyond that of the testimony by the State's witnesses so it would not "be helpful to him" to testify. He confirmed that the Petitioner ultimately decided whether to testify, explaining that he "advised [the Petitioner] not to testify . . . [but] ultimately an individual makes their own decision if they want to testify or not."

On cross-examination, Counsel testified that the photographic lineup did not seem important prior to trial because he believed the victim would testify truthfully. He agreed, however, that in hindsight the document was important to have prior to the victim's testimony. He also testified that he still believed the Petitioner should not have testified even after Detective Harris's testimony that the Petitioner had "just gotten out of the pen" because it did not "change the fact that [the Petitioner]'s criminal record . . . could have been more damaging to him in cross-examination in front of a jury."

Following the hearing, the post-conviction court took the matter under advisement and issued a detailed written order denying the Petitioner relief. It is from this order that the Petitioner timely appeals.

## ANALYSIS

On appeal, the Petitioner argues the he received ineffective assistance of counsel based on Counsel's failure to request a mistrial after the State's witness testified that the Petitioner "had just gotten out of the pen;" Counsel's improper advice not to testify at trial; and Counsel's failure to request the photographic lineup evidence prior to trial.[1] The State

---

[1] The Petitioner raised several other grounds of ineffective assistance of counsel in his petition for

(continued...)

responds that the Petitioner failed to prove his allegations by clear and convincing evidence, and therefore, the post-conviction court properly denied relief. We agree with the State.[2]

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

---

[1](...continued)
post-conviction relief and during the evidentiary hearing. The post-conviction court denied relief on those grounds, and the Petitioner did not raise them as grounds for relief in this appeal. Accordingly, we will not address these issues.

[2] Intertwined with his claims of ineffective assistance of counsel, the Petitioner also asserts that his Fifth Amendment right to remain silent and Fourteenth Amendment due process rights were violated. Specifically, he asserts that the State violated his right to remain silent by improperly introducing testimony that the Petitioner had previously been incarcerated and violated his due process rights by withholding exculpatory evidence, i.e. the photographic lineup evidencing the victim's inability to identify the Petitioner, in violation of Brady v. Maryland, 373 U.S. 83 (1963). The post-conviction court failed to address these issues as independent claims for relief, and instead analyzed them solely as grounds for ineffective assistance of counsel. The State asserts, and we agree, that these claims have been waived because the Petitioner failed to raise them on direct appeal. See T.C.A. § 40-30-106(g). Thus, like the post-conviction court, we will address these claims only within the context of ineffective assistance of counsel.

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The Petitioner first asserts that he received ineffective assistance of counsel based upon Counsel's failure to request a mistrial after the State's witness testified that the Petitioner had

"just gotten out of the pen." The Petitioner acknowledges that the trial court immediately issued a curative instruction to the jury, but maintains that the instruction did not "un-ring" the bell and Counsel's failure to move for a mistrial prejudiced the Petitioner's defense.

We note at the outset that a trial court should declare a mistrial "only upon a showing of manifest necessity." See State v. Robinson, 146 S.W.3d 469, 494 (Tenn. 2004) (citing State v. Saylor, 117 S.W.3d 239, 250-51 (Tenn. 2003)). "'The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict.'" State v. Reid, 164 S.W.3d 286, 341-42 (Tenn. 2005) (quoting State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996)). "A prompt curative instruction after a spontaneous declaration will often obviate the need for a mistrial," especially where the State's evidence against the defendant is strong. State v. Tony Curtis Holmes, No. W2007 -02733-CCA-R3-CD, 2009 WL 3047007, at *2 (Tenn. Crim. App. Sept. 24, 2009), perm. app. denied (Tenn. Mar. 15, 2010); see, e.g., State v. Mathis, 969 S.W.2d 418, 422 (Tenn. Crim. App. 1997) (upholding the trial court's refusal to grant a mistrial based upon improper testimony where the court issued a prompt curative instruction); State v. Hall, 947 S.W.2d 181, 184 (Tenn. Crim. App. 1997) (finding that the improper testimony about defendant's prior incarceration did not warrant granting of mistrial because trial court issued a prompt curative instruction).

In denying relief, the post-conviction court emphasized the prompt curative instruction and the strength of the State's evidence against the Petitioner, and noted that it "would not have been inclined to grant a mistrial had one been requested." Consequently, the court concluded that the Petitioner failed to demonstrate that Counsel's conduct was ineffective or that the Petitioner was prejudiced. The record does not preponderate against these findings. Given the brief nature of the comment and the immediate curative instruction, Counsel's decision not to object or move for a mistrial appears to be a tactical decision. Indeed, Counsel testified that he believed the court would be unlikely to grant a mistrial and his motion would only further highlight the issue for the jury. See Bobby Joe Rollins, No. M2010-00131-CCA-R3-PC, 2011 WL 856938, at *7 (Tenn. Crim. App. Mar. 11, 2011), perm. app. denied (Tenn. May 25, 2011) (reasoning that counsel's failure to object or move for a mistrial after State's witness testified the defendant had recently gotten out of "the pen" was tactical to avoid drawing more attention to the comment). Moreover, as noted by this Court on direct appeal, there was "strong evidence of the [Petitioner]'s guilt" presented at trial, and therefore, the prejudicial impact of the comment was not great. Based on our review, we conclude that the comment did not give rise to a "manifest necessity" warranting a mistrial. Accordingly, the Petitioner is not entitled to relief on this issue.

The Petitioner next asserts that Counsel was ineffective for improperly advising him not to testify at trial. He maintains that Counsel advised him not to testify because of his

criminal record, and assured him that his record could not be used against him if he chose not to testify. However, he asserts that "the State took away this fundament right [to remain silent] by attacking [the Petitioner]'s character even though he chose not to testify . . . and the jury . . . got to hear the fact that he had just gotten out of prison, without getting to hear [the Petitioner]'s side of the story." Thus, as we understand the Petitioner's argument, the State put his criminal record in issue, and Counsel's advice to not testify amounted to ineffective assistance of counsel.

At the post-conviction hearing, Counsel testified that he and the Petitioner had "numerous discussions" leading up to trial and discussed the "pros and cons of his testifying." Counsel recalled that he advised the Petitioner not to testify given the Petitioner's criminal record, and maintained his opinion despite the witness's comment regarding the Petitioner's recent incarceration because he believed that cross-examination could have been "more damaging" to the Petitioner. He insisted, however, that the decision not to testify was made by the Petitioner. In addition to the testimony of Counsel, the Petitioner agreed that Counsel did not prevent him from testifying and conceded that he made the decision. Further, he acknowledged signing a Momon waiver, which affirmed that he "voluntarily and personally" chose to waive his right to testify at trial. The post-conviction court accredited the testimony of Counsel, and concluded that the Petitioner made the decision not to testify after listening to the advice of Counsel. The record does not preponderate against these findings and supports the post-conviction court's conclusion. Based on our review, we conclude that the Petitioner was adequately advised of his right to testify and made the decision to waive that right based on sound trial strategy. Cf. State v. Zimmerman, 823 S.W.2d 220, 227 (Tenn. Crim. App. 1991) (citing five factors that "would tend to indicate ineffective assistance of counsel" with regard to failing to call the defendant to testify: "(1) only the victim and the defendant were present when the offense was committed; (2) only the defendant could present a 'full version of [his] theory of the facts;' (3) the defendant's testimony could not be impeached by prior criminal convictions; (4) the defendant could give an account of the relationship with the victim; and (5) the attorney had let in objectionable, prejudicial testimony with the intention of clarifying it with the testimony of the defendant"). The Petitioner is not entitled to relief.

Finally, the Petitioner asserts that Counsel was ineffective for failing to obtain the State's photographic lineup evidencing the victim's inability to identify the Petitioner prior to trial. The Petitioner maintains that Counsel's failure to obtain this evidence prevented Counsel from being able to impeach the victim on the stand and prejudiced his defense.

There is no debate that Counsel did not obtain the photographic lineup prior to trial. Counsel testified that he believed it was a "non-issue" based on discussions with prosecutors before trial because there was "no question" that the victim had not identified the Petitioner.

Following the victim's testimony that he had identified the Petitioner, Counsel immediately requested a copy of the lineup and called Detective Harris to rebut the victim's testimony. The post-conviction court concluded, and we agree, that "[b]ased on how this unusual situation arose," the Petitioner has not "met his burden of showing counsel was ineffective." Furthermore, the Petitioner has failed to establish that he was prejudiced. Counsel obtained a copy of the lineup later that day and used the evidence to aid in the Petitioner's defense. Counsel testified that while he was "disappointed" that he could not impeach the victim during cross-examination, the jury was able to hear about the victim's non-identification through the testimony of Detective Harris. Accordingly, we conclude that the Petitioner has failed to establish that he received ineffective assistance of counsel. The Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE